UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patrick L. Booker, # 297590,<br>personally and as next friend for J.J., a minor,<br><br>Plaintiff,<br>v.<br><br>Brandy P. Sullivan, Human Service Specialist II; Tammy Childs, Human Service Specialist II; Shawnee Peeples, Greenville County Sheriff's Investigator; Greenville County Sheriff's Office,<br><br>Defendants. | C/A No. 8:11-1131-HMH-JDA<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff, Patrick L. Booker ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983.[1] Plaintiff is an inmate at Lieber Correctional Institution, a facility of the South Carolina Department of Corrections ("SCDC"), and files this action *in forma pauperis* under 28 U.S.C. § 1915. Plaintiff files this § 1983 action "personally and as next friend for J.J., a minor, alleging violation of his and his minor child's constitutional rights, and seeking money damages, as well as declaratory judgement." ECF No. 1 at 1. He also seeks supplemental jurisdiction over his state law claims. *Id*. The Complaint names government employees and a governmental entity as defendants.[2]

**INITIAL REVIEW**

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C.

---

[1] Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

[2] The court is required to screen "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

§ 1915 and § 1915A.  This review has been conducted in light of the following precedents: *Ashcroft v. Iqbal*, ---U.S. ----, 129 S.Ct. 1937 (2009)*; Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978).  The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit.  To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action is "frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief."[3] 28 U.S.C. § 1915(e)(2)(B)(i-iii).

This Court is required to liberally construe *pro se* documents, *Erickson v. Pardus*, 551 U.S. 89 (2007), holding them to a less stringent standard than those drafted by attorneys, *Hughes v. Rowe*, 449 U.S. 9 (1980) (*per curiam*).  Even under this less stringent standard, however, the *pro se* Complaint is subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

---

[3] Screening pursuant to 28 U.S.C. § 1915A is subject to the same standard.

2

**BACKGROUND**

The Complaint refers to J.J.'s mother as "Mother" and uses pseudonyms for the names of Mother's three children. ECF No. 1 at 4. "Janet" is the pseudonym for J.J., Plaintiff's daughter. The two other minors referenced in the Complaint, "Jason" and "Jill," are not Plaintiff's children. The Complaint alleges that in September of 2008, Mother was investigated by the South Carolina Department of Social Services ("DSS") for physical neglect, and subsequent drug screenings revealed her children were positive for exposure to drugs. Mother entered an agreement with DSS where the minor children were placed in the care of grandparents, while Mother underwent treatment services. *Id*. Child removal proceedings were not pursued at that time. *Id*. at 5. On November 4, 2008, Defendant Sullivan became the social services caseworker and subsequently noted that J.J.'s father (Plaintiff) was in SCDC. *Id*. at 6. In January of 2009, drug screenings revealed Mother, Jason and Jill were exposed to drugs, but Janet (J.J.) was negative for drug exposure. Mother entered a new agreement with DSS concerning more restrictive visitation with the children. *Id*. at 6.

On February 6, 2009, Defendant Peeples of the Greenville County Sheriff's Office ("GCSO") and Defendant Sullivan went to Mother's home, where Jill and Jason were present without either grandparent. *Id*. at 7. Grandmother arrived shortly thereafter. *Id*. at 8. The Complaint claims the two children were taken into emergency custody without a court order or probable cause, and without any indication of imminent danger to the children. *Id*. at 9. The Complaint also alleges that Defendant Peeples then went to Janet's (J.J.'s) school and took her into emergency custody without a court order or probable

cause. *Id.* Plaintiff contends that at "the probable cause hearing, [Defendant] Sullivan and [Defendant] Peeples claimed that the minor children were taken into emergency custody without a court order because the child has loss [sic] adult protection and supervision" and they participated in judicial deception concerning J.J.'s location at the time she was taken into custody. *Id*. at 13. The Complaint alleges Defendant Sullivan failed to notify Plaintiff of the emergency removal of his daughter, J.J., and placement into State custody, as well as failed to send notification of the probable cause hearing regarding the emergency removal, despite Plaintiff being named an interested party. *Id*. at 10, 12. The Complaint claims that in the petition filed in the removal proceedings, Defendant Sullivan materially misrepresented facts, such as: stating that J.J. was at Mother's residence (although actually at school) when taken into custody; omitting that the grandmother was at the residence when the children were taken into custody; omitting that J.J. was taken into custody by Defendant Peeples at school; and stating that Plaintiff's address was unknown. *Id*. at 11-13. Once J.J. was in DSS custody, the Complaint alleges Defendant Childs refused Plaintiff's requests for J.J.'s medical records, as well as his request to write and/or call J.J. *Id.* at 15.

The Complaint claims violation of Plaintiff's due process rights for "arbitrary interference with family association" by depriving Plaintiff "of the custody, care and services of his minor child without due process of law," including notice and opportunity to be heard at the probable cause hearing. *Id.* at 16. Plaintiff further claims violation of his "Fourteenth Amendment right to be free of judicial deception" by Defendant Sullivan's false statements that "Janet [J.J.] was found at an unauthorized place without supervision and protection,"

4

as well as "she [Defendant Sullivan] nor DSS knew [Plaintiff's] address or location to notify him of the emergency custody actions, regarding his minor child, and /or the probable cause hearing regarding the same." *Id.* at 17. The Complaint also claims Defendant Peeples violated J.J.'s "Fourth Amendment right to be free from unreasonable seizure." *Id*. Plaintiff claims violation of state law as well, including false imprisonment of J.J.; violation of Plaintiff's right to J.J.'s medical records while J.J. was in DSS custody; Plaintiff's "state law right to notice of the emergency custody actions regarding" J.J.; and gross negligence by Defendant GCSO based on Defendant Peeples' actions. *Id*. at 18-19.

## DISCUSSION

Plaintiff files this civil rights action pursuant to 42 U.S.C. § 1983. A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). The civil rights statute 42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994), *quoting Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### *Pro se* Parent and Appointment of Counsel

As a threshold issue, Plaintiff cannot litigate a *pro se* action in federal court on behalf of his minor child. *Myers v. Loudoun County Public Schools*, 418 F.3d 395, 401 (4th

5

Cir. 2005) ("[N]on-attorney parents generally may not litigate the claims of their minor children in federal court."). Although 28 U.S.C. § 1654 permits a litigant to "conduct their own cases personally," it does not extend to litigating for others, and "courts are nearly unanimous in holding that a parent or guardian cannot sue on behalf of a child without securing counsel." *Gallo v. United States*, 331 F.Supp.2d 446, 447 (E.D. Va. Aug. 23, 2004) (collecting cases). Because retention of counsel would protect the interests of the minor in an action brought by a *pro se* parent, the non-attorney parent is usually allowed time to retain an attorney for the child. In this case, Plaintiff acknowledged that he cannot afford to retain an attorney within the Motion to Appoint Counsel he filed, both for himself and his child. ECF No. 3.

Appointment of counsel should be denied in this case. The law is clear that a plaintiff in a civil rights case under § 1983 has no right to court-appointed counsel. *Hardwick v. Ault*, 517 F.2d 295 (5th Cir. 1975). The court, however, has discretionary authority to appoint counsel "in exceptional cases" if a civil action is brought by a litigant proceeding *in forma pauperis*. *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); 28 U.S.C. § 1915(d). The pleadings do not present unusual circumstances to justify the appointment of counsel in this case. Although the denial of appointment of counsel for the minor, J.J., requires dismissal of the claim brought on behalf of J.J. because the claim cannot be litigated by a *pro se* parent, the dismissal of J.J.'s claim, without prejudice, is appropriate in this case, as discussed below. *Gallo v. United States*, 331 F.Supp.2d 446, 448 (E.D. Va. Aug. 23, 2004) (issue is "whether dismissal is the appropriate outcome when a parent sues *pro se* on behalf of a child").

**Fourth Amendment Seizure**

The Complaint claims Defendant Peeples violated J.J.'s "Fourth Amendment right to be free from unreasonable seizure." ECF No. 1 at 17. A minor being taken from a parent into protective custody is not the same "seizure" as a person being arrested on criminal charges. The Fourth Circuit has noted:

> There is some question over the precise legal character of the child's liberty interest implicated by the assumption of his custody by the state since, as a minor, he will always be in someone's custody. *See Donald v. Polk County*, 836 F.2d 376, 380 n. 5 (7th Cir. 1988); *Lossman v. Pekarske*, 707 F.2d 288, 290 (7th Cir. 1983). The Supreme Court, however, has held that the confinement of children must be accompanied by procedural due process, thus recognizing at least a limited liberty interest on their behalf independent of that of their parents. *See Schall v. Martin*, 467 U.S. 253, 263, 104 S.Ct. 2403, 2409, 81 L.Ed.2d 207 (1984) (preventive pretrial detention); *Parham v. J.R.*, 442 U.S. 584, 600, 99 S.Ct. 2493, 2503, 61 L.Ed.2d 101 (1979) (commitment to mental institution).

*Jordan by Jordan v. Jackson*, 15 F.3d 333, 343, n.10 (4th Cir. 1994). Although the procedural due process required to temporarily deprive a parent of the custody of a child "may be delayed where emergency action is necessary," the state must "initiate prompt judicial proceedings to ratify its emergency action." *Weller v. Dep't of Social Services*, 901 F.2d 387, 393, 396 (4th Cir. 1990). The Complaint reveals that a judicial proceeding, attended by Mother (J.J.'s custodial parent), was held within 72 hours of J.J.'s being taken into State custody, which ratified the State action of taking temporary custody of J.J. ECF No. 1 at 14. It appears on the face of the Complaint that J.J. received the required procedural due process. Thus, appointment of counsel for the minor, J.J., is not necessary to protect against injustice in this case. *Myers*, 418 F.3d at 399 (citing *Doe v. Bd. of Educ.*, 165 F.3d 260, 264 (4th Cir. 1998) (a minor child "is always the ward of every court wherein

his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him.")). Further, J.J.'s claim, presented by a non-attorney parent, should be dismissed without prejudice, so that any possible claim is not extinguished. Thus, J.J.'s claim against Defendant Peeples should be dismissed without prejudice.

**Defendant Greenville County Sheriff's Office**

The Complaint also claims gross negligence by Defendant GCSO based on Defendant Peeples' actions. ECF No. 1 at 19. The claim against GCSO is brought under state law, and not as a federal claim under § 1983.[4] A state law claim could be considered through the exercise of "supplemental jurisdiction," which allows federal courts to hear and decide state law claims along with federal law claims. *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 387 (1998). Title 28 U.S.C. § 1367(a) requires such state claims to be "so related" to the federal claims "that they form part of the same case or controversy." Because the claim against GCSO is completely related to J.J.'s federal claim, which should be dismissed as discussed above, supplemental jurisdiction over the GCSO claim should be declined. Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). Thus, Defendant GCSO should be dismissed as a defendant in this case.

---

[4] Even if the Complaint could be liberally construed to be brought under § 1983, Defendant GCSO is not subject to suit under § 1983. In South Carolina, a sheriff's department is an agency of the state, not a department under the control of the county. *Carroll v. Greenville County Sheriff's Dep't,* 871 F. Supp. 844, 846 (D.S.C. 1994) (suit against the sheriff's office is suit against the state). As an agency of the state, the GCSO is immune from suit under the Eleventh Amendment. *Stewart v. Beaufort County*, 481 F.Supp.2d. 483, 492 (D.S.C. 2007) ("[A] federal court lacks jurisdiction to hear a cause of action against a South Carolina Sheriff's Department, as such a suit is barred by state immunity.").

8

**Defendants Sullivan and Childs**

The remaining claims are brought against Defendant Sullivan and Defendant Childs, both caseworkers for DSS involved in the emergency removal of Plaintiff's daughter J.J. from parental custody. The Complaint claims violation of Plaintiff's due process rights for "arbitrary interference with family association" by depriving Plaintiff "of the custody, care and services of his minor child without due process of law," including notice and opportunity to be heard at the "probable cause hearing." ECF No. 1 at 16. Parents have a liberty interest in familial relations as a component of substantive due process. *Meyer v. Nebraska*, 262 US 390, 399 (1923); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (acknowledging a "fundamental liberty interest of natural parents in the care, custody, and management of their children"). Thus, the State cannot take custody of a child from a parent, which interferes with a liberty interest, without procedural due process. *Weller*, 901 F2d. at 398 ("Today we hold that a parent is entitled to a hearing initiated by the State before he may be deprived of the custody of his child, and in an emergency a prompt hearing may ratify the state action."). Plaintiff further claims violation of his "Fourteenth Amendment right to be free of judicial deception" by Defendant Sullivan's false statements contained in the petition for removal, which was prepared by Defendant Childs. *See Gedrich v. Fairfax County Dept. of Family Services*, 282 F.Supp.2d 439, 467 (E.D. Va. 2003) (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir. 2000) ("[N]o matter how much process is required, at a minimum it requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents.")).

Defendants Sullivan and Childs have absolute immunity from damages under § 1983 for their actions "that could be deemed prosecutorial." *Vosburg v. Dept. of Social Services*, 884 F.2d 133, 138 (4th Cir. 1989). The social worker's absolute immunity extends to liability resulting from the filing of a removal petition. *Id*. The *Vosburg* court relied primarily on two Supreme Court decisions. In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that prosecutorial immunity is necessary to allow the prosecutor to exercise independent judgment without the fear or threat of § 1983 litigation. *Id*. at 424-26. In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court held that "[a]bsolute immunity is ... necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Id*. at 512. Absolute immunity is designed to protect the judicial process. Although DSS case workers do not prosecute criminal cases, they have the responsibility to implement state laws to protect children. "[T]he filing of a removal petition is, in essence, the start of judicial proceedings against the parent or guardian of a minor child, and the duties of the social worker at that point are those of an advocate in that process." *Vosburg*, 884 F.2d at 137. Immunity from § 1983 liability also extends to the preparation and filing of a removal petition, even if false statements are submitted in support of emergency removal. *Gedrich*, 282 F.Supp.2d at 467 (citing *Vosberg*, 884 F.2d at 135).

Inasmuch as the Complaint could be construed as claiming some actions of Defendants Sullivan and Childs are non-prosecutorial and not subject to prosecutorial immunity, the Complaint fails to establish a claim against Defendants Sullivan and Childs. Plaintiff claims violation of his substantive due process rights for "arbitrary interference with

10

family association" by depriving Plaintiff "of the custody, care and services of his minor child without due process of law," including notice and opportunity to be heard at the probable cause hearing. ECF No. 1 at 16. The Complaint, however, makes it clear that Plaintiff was incarcerated at the time his child was taken into emergency custody and at the time of the hearing held within three days of the removal. In fact, Plaintiff has been incarcerated in SCDC since November 6, 2003, with a projected release date of November 27, 2020.[5] It is indisputable that Plaintiff did not have physical custody or control of his child during the events alleged in the Complaint, nor could he have gained physical custody or control of his child during that time.

The Complaint is silent as to any "family association" Plaintiff maintained with his child prior to the emergency removal, despite his incarceration, such as visitation at the prison, phone calls, or letters. The Complaint's bald statement of interference with the parental relationship is not supported by any factual allegations that suggest that a relationship existed. *See Ashcroft* 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Plaintiff states that he is the "natural or otherwise the biological father of J.J, and that J.J. is "presently in the custody of her mother." ECF No. 1 at 2. It is unclear how long DSS maintained temporary custody of J.J., but it can be inferred that DSS did *not* subsequently seek

---

[5] The court takes judicial notice of the SCDC website, which contains inmate information. *See* South Carolina Department of Corrections, Inmate Search, http://www.doc.sc.gov/InmateSearchDisclaimer.jsp (last visited July 15, 2011). This Court may take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Williams v. Long*, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government Web sites are inherently authentic or self-authenticating).

termination of parental rights. The law establishes that, as the natural father, Plaintiff is entitled to due process in relation to *permanent* custody proceedings, because such proceedings could extinguish his rights. *Santosky v. Kramer*, 455 U.S. at 753-54. But, this action concerns a *temporary* custody proceeding, during a time that Plaintiff did not have physical custody of the child, nor could he take custody of the child, because of his incarceration. The Complaint does not allege, and it cannot be inferred, that any of Plaintiff's parental interests were harmed by the challenged actions of Defendants Sullivan and Childs. Thus, Plaintiff's liberty interest in family integrity or association was not impaired, and he is not entitled to seek damages for deprivation of due process. *See Langton v. Maloney*, 527 F.Supp. 538 (D. Conn. Oct. 20, 1981) (parents failed to show how any parental interest was harmed by the challenged actions warranting an award of damages for deprivation of due process.). The Complaint fails to state a claim for deprivation of due process under § 1983 against Defendants Sullivan and Childs for interference in "family association" between Plaintiff and his daughter, J.J., or for deprivation of the custody, care and services of his minor child.

**Remaining State Law Claims**

The Complaint claims violation of state law and seeks supplemental jurisdiction for this Court to consider the state law claims. Federal courts may hear and decide state law claims along with federal law claims when the state claims are "so related" to the federal claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Federal courts are permitted to decline supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Plaintiff's claims

based on federal law should be dismissed, so supplemental jurisdiction over his state law claims should be declined.

## **RECOMMENDATION**

Accordingly, it is recommended that the District Judge deny the Motion to Appoint Counsel for Plaintiff and J.J., a minor [ECF No. 3].

It is further recommended that the Complaint be dismissed *without prejudice* and without service of process.


July 21, 2011                                         s/Jacquelyn D. Austin
Greenville, South Carolina                    United States Magistrate Judge


**The plaintiff's attention is directed to the notice on the following page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 E. Washington Street, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).