IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Patrick L. Booker, #297590, personally and as next friend for J.J., a minor, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 8:11-1131-HMH-JDA |
| vs. | ) ) | **OPINION & ORDER** |
| Brandy P. Sullivan, Human Services Specialist II; Tammy Childs, Human Services Specialist II; Shawnee Peeples, Greenville County Sheriff's Investigator; Greenville County Sheriff's Office, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 of the District of South Carolina.[1] Patrick L. Booker ("Booker"), a pro se state prisoner, filed a civil rights action under 42 U.S.C. § 1983 "personally and as next friend for J.J.,[2] a minor, alleging violation of his and his minor child's constitutional rights, and seeking money damages, as well as declaratory judgement." (Compl. at 1.) Booker is a state prisoner currently incarcerated at Lieber Correctional Institution, a South Carolina Department of Corrections

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

[2] Booker refers to J.J. as Janet in his complaint. The court will refer to Booker's daughter as J.J. throughout the order.

("SCDC") facility and is proceeding pro se under 28 U.S.C. § 1915. Magistrate Judge Austin recommends that the complaint be dismissed without prejudice and without issuance and service of process and that the motion to appoint counsel be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

According to the complaint, in September 2008, the mother of Booker's child, J.J., agreed after an investigation by the South Carolina Department of Social Services ("DSS") for physical neglect and drug abuse (drug testing determined that the children had been exposed to drugs), to place her children, including J.J., in the care of grandparents while she received treatment. (Compl. ¶¶ 7-9.) On November 4, 2008, Brandy P. Sullivan ("Sullivan") was appointed as the social services caseworker. (Id. ¶ 13.) In January 2009, drug testing again revealed that two of the mother's minor children had been exposed to drugs. (Id. ¶ 14.) J.J. did not test positive for exposure to drugs. (Id.) Pursuant to agreement, the mother's contact with her children was restricted to supervised visitation. (Id. ¶ 15.)

On February 6, 2009, Shawnee Peeples ("Peeples") of the Greenville County Sheriff's Office ("GCSO") and Sullivan visited the mother's home and discovered two minor children present without supervision by either grandparent. (Compl. ¶¶ 17-18, 22.) Booker alleges that Peeples placed the two children in emergency custody and then went to J.J's school and placed her in emergency custody without a court order or probable cause and without any evidence that the children were in imminent danger. (Id. ¶ 23.) Booker submits that at "the probable cause hearing, Sullivan and Peeples claimed that the minor children were taken into emergency custody without a court order because the child has loss [sic] adult protection and supervision" and intentionally misrepresented J.J.'s location when she was taken into custody. (Id. ¶ 33.) Further, Booker alleges that he was not informed of the emergency removal of J.J. and was not notified of

2

the 72-hour probable cause hearing. (Id. ¶ 26.) In addition, Booker contends Sullivan made several misrepresentations in the removal petition, which was prepared by Tammy Childs ("Childs"), including indicating that J.J. was at the residence when she was removed when in fact she was removed from school; failing to state that the grandmother arrived at the residence before the children were removed; and indicating that Booker's address was unknown. (Id. ¶ 43.)

Booker raises the following claims: (1) due process violation for "arbitrary interference with family association" and failure to provide notice and opportunity to be heard, (2) "Fourteenth Amendment right to be free of judicial deception," (3) violation of J.J.'s Fourth Amendment right to be free from unreasonable seizure, and (4) state law claims for false imprisonment of J.J., denial of access to J.J.'s medical records, failure to comply with state law notice requirements, and gross negligence. In addition, Booker moves for the appointment of counsel.

## II. Discussion of the Law

### A. Report and Recommendation

Magistrate Judge Austin recommends denying Booker's motion for appointment of counsel because there are "no unusual circumstances to justify the appointment of counsel in this case." (Report & Recommendation 6.) In addition, the magistrate judge found that Booker could not proceed pro se on behalf of his minor child. Further, the magistrate judge found that J.J.'s Fourth Amendment rights were not violated when she was placed in protective custody because she was afforded procedural due process as a hearing was held within 72 hours of J.J. being placed in state custody. In addition, the magistrate judge recommends declining supplemental jurisdiction over J.J.'s state law claim against GCSO. As to Booker's due process claim, the magistrate judge recommends dismissing the claim because Sullivan and Childs have absolute

3

immunity for prosecutorial actions and Booker fails to state a claim for any nonprosecutorial actions. Finally, Magistrate Judge Austin recommends declining to excercise supplemental jurisdiction over Booker's state law claims. (Report & Recommendation, generally.)

### B. Objections

Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court finds that some of Booker's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate his claims. However, Booker argues that the magistrate judge erred in finding that counsel should not be appointed in this case. In addition, Booker objects to the magistrate judge's conclusion that J.J.'s Fourth Amendment rights and due process rights were not violated when she was taken into emergency custody. Further, Booker argues that his due process rights were violated when he did not receive notice of the 72-hour probable cause hearing and he was deprived of his right to family association. Finally, Booker argues that Sullivan and Childs are not entitled to absolute immunity for their misrepresentations at the 72-hour probable cause hearing and in the petition.

#### 1. J.J.'s Fourth Amendment and Procedural Due Process Claim

Booker raises a Fourth Amendment claim on behalf of J.J. alleging that she was seized in violation of her rights when she was taken into protective custody at school. Booker objects to

the magistrate judge's conclusion that the seizure was proper and that J.J. "received the required procedural due process." (Objections at 13-16; Report & Recommendation 7.) As an initial matter, "non-attorney parents generally may not litigate the claims of their minor children in federal court." Myers v. Loudoun County Public Sch., 418 F.3d 395, 401 (4th Cir. 2005). Further, "it is well settled that in civil actions [under § 1983] the appointment of counsel should be allowed only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). However, "[i]f it is apparent . . . that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978). Booker has moved for the appointment of counsel. However, after de novo review, the court finds that Booker has failed to show exceptional circumstances or a colorable claim for relief for the reasons set forth in the Report and Recommendation. Based on the foregoing, Booker cannot proceed on J.J.'s Fourth Amendment and due process claims.[3] These claims are dismissed without prejudice.

## 2. Absolute Immunity

Booker objects to the magistrate judge's conclusion that Sullivan and Childs are entitled to absolute immunity based on alleged material false statements made by Sullivan at the hearing and contained in the removal petition prepared by Childs. (Objections at 19-21; Compl. ¶¶ 27-30, 37.) Booker argues that the alleged misstatements were "non-prosecutorial acts."

---

[3] Booker objects that the magistrate judge failed to evaluate whether J.J. had stated a claim for violation of her liberty interest in family association. (Objections at 22.) However, this objection does not support a finding of exceptional circumstances because it fails for the same reasons as Booker's claim for interference in family association.

5

(Objections at 19-21.) "[A]bsolute immunity applies . . . to those activities of social workers that could be deemed prosecutorial." Vosburg v. Dep't of Soc. Servs., 884 F.2d 133, 138 (4th Cir. 1989); Gedrich v. Fairfax County Dep't of Family Servs., 282 F. Supp. 2d 439, 467 (E.D. Va. 2003) (absolute immunity for alleged false statements in petition); Malachowski v. City of Keene, 787 F.2d 704, 712 (1st Cir. 1986) (finding that a juvenile officer was entitled to absolute immunity for filing an allegedly false delinquency petition). However, social workers are not absolutely immune "from liability arising from their conduct in investigating the possibility that a removal petition should be filed." Vosburg, 884 F.2d at 138. Instead, "social workers [are] entitled to only good faith immunity for their investigative conduct prior to filing a . . . petition." Id.

> [T]he filing of a removal petition is, in essence, the start of judicial proceedings against the parent or guardian of a minor child, and the duties of the social worker at that point are those of an advocate in that process . . . . Like a prosecutor, a social worker must exercise her best judgment and discretion in deciding when to file a Removal Petition. The welfare of the state's children would be jeopardized if social workers had to weigh their decision in terms of their potential personal liability.

Id. at 137. "[S]ocial workers are absolutely immune . . . when they are acting in their capacity as legal advocates–initiating court actions or testifying under oath . . . ." Holloway v. Brush, 220 F.3d 767, 775 (6th Cir. 2000) (en banc). Based on the foregoing, Childs and Sullivan are absolutely immune for their alleged misstatements in the removal petition and at the removal hearing. Therefore, this objection is without merit and Booker's claim alleging a Fourteenth Amendment right to be free of judicial deception is dismissed.

### 3.  Due Process Claims

Booker objects to the magistrate judge's finding that his procedural due process rights were not violated when he was not notified of the 72-hour emergency hearing after J.J. was taken

6

into protective custody. (Objections 24-25.) Further, Booker objects to the magistrate judge's conclusion that the Defendants did not violate his liberty interest in family association. (Id. at 22-23.) "[A] parent is entitled to a hearing initiated by the State before he may be deprived of the custody of his child, and in an emergency a prompt hearing may ratify the state action." Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387, 398 (4th Cir. 1990) (internal quotation marks omitted).

> Due process does not mandate a prior hearing in cases where emergency action may be needed to protect a child. "However, in those 'extra-ordinary situations' where deprivation of a protected interest is permitted without prior process, the constitutional requirements of notice and an opportunity to be heard are not eliminated, but merely postponed."

Id. at 393 (internal citations omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). S.C. Code Ann. § 63-7-710 provides that "[t]he family court shall schedule a probable cause hearing to be held within seventy-two hours of the time the child was taken into emergency protective custody." Further, S.C. Code Ann. § 63-7-700(B)(1) provides that "the department shall exercise every reasonable effort to promptly notify the noncustodial parent that a removal proceeding has been initiated and of the date and time of any hearings scheduled." Booker alleges that Sullivan knew that he was incarcerated and should have notified him of the hearing. The issue is whether Sullivan violated Booker's constitutional right to due process, not whether Sullivan violated S.C. Code Ann. § 63-7-700(B)(1). "[N]oncustodial parents must be notified and offered a hearing before their parental rights are terminated. Terry v. Richardson, 346 F.3d 781, 786 (7th Cir. 2003). However, the hearing at issue in this case was a probable cause hearing to determine "whether there was probable cause for taking emergency protective custody and for the department to assume legal custody of the child and shall determine whether probable cause

7

to retain legal custody of the child remains at the time of the hearing." S.C. Code Ann. § 63-7-710(C). At all times relevant to this action, Booker has been incarcerated and did not have custody and was incapable of taking custody of J.J. In addition, Booker states in his objections that subsequent to the 72-hour hearing, he "did attend multiple court hearings regarding his daughter's custody." (Objections at 22.) Based on the foregoing, the court finds that his constitutional rights to procedural due process were not violated when he did not receive notice and an opportunity to be heard at the 72-hour hearing which did not affect his right to custody or ability to care for J.J.

In addition, Booker objects arguing that he has stated a claim for Fourteenth Amendment violation of his liberty interest in family association. (Id. 22-23.) It "is beyond question that parents have a fundamental liberty interest in the care, custody, and management of their children. This right, however, is not absolute." Zakrzewski v. Fox, 87 F.3d 1011, 1013-14 (8th Cir. 1996) (internal citations and quotation marks omitted) (finding that the plaintiff's "liberty interest in the care, custody, and management of his son ha[d] been substantially reduced by the terms of the divorce decree and Nebraska law" and noting that although the court has "recognized the possibility that visitation and placement decisions may be subject to due process scrutiny, as such decisions may infringe upon a parent's interest in the care, custody, and management of their child," there has not been "a case where the right to visitation was infringed in a manner that rose to the level of a constitutional violation"). At the most, Booker's right to contact and have his daughter visit him at Booker's place of incarceration was temporarily affected by J.J.'s placement in state custody. To the extent Booker is alleging that the Defendants' nonprosecutorial acts related to their investigation and placement of J.J. in emergency protective custody deprived him of his liberty interest in family association, the

alleged conduct in this case "does not amount to a deprivation of liberty." Id. at 1014. The court finds that the facts, as alleged by Booker, "are insufficient to indicate that the defendants intentionally infringed upon [his] liberty interest in a manner that shocks the conscience." Id. Based on the foregoing, Booker's substantive due process based on interference with family association is dismissed.

Further, the court declines to exercise supplemental jurisdiction over the state law claims. Therefore, after a thorough review of the Report and Recommendation and the record in this case, the court adopts the magistrate judge's Report and Recommendation.

It is therefore

**ORDERED** that Booker's complaint, docket number 1, is dismissed without prejudice and without issuance and service of process. It is further

**ORDERED** that Booker's motion to appoint counsel, docket number 3, is denied.

**IT IS SO ORDERED**.

                                          s/Henry M. Herlong, Jr.
                                          Senior United States District Judge

Greenville, South Carolina
August 22, 2011

### NOTICE OF RIGHT TO APPEAL

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.